Thank you, Your Honor. May it please the Court, Jonathan Franklin for the Appellant eMove. This is – this was not an exceptional case warranting the sanction of attorney's fees. This was the run-of-the-mill case where a party presented evidence and non-frivolous arguments in support of its position on summary judgment, but that evidence and argument was not sufficient to carry the day. You certainly managed to annoy the district judge. Granted, Your Honor, but here we're now before a new panel, and it is a de novo standard of review in the Ninth Circuit. And applying that review, first of all, it's well settled and clear among all the parties in the Court that a party is not entitled to attorney's fees under the Lanham Act just because it prevailed on summary judgment. But applying the de novo standard, the district court erred in holding that this was an exceptional case because eMove's arguments, although they did not ultimately prevail, raised debatable and non-frivolous issues, which under the Court's precedence mean that they were not well established. So what evidence do you – did you have in support of your case? Because you had this one sort of fax not prepared by them based upon a purported conversation with their CEO, and you had some remarks at a trade show. What else did you have in support of your case? Four categories, Your Honor. We have the so-called Norton fax that Your Honor mentioned. Now, let's stop for a minute on the Norton fax. Am I right in recalling that that was not prepared by them? It was prepared by someone else? It was prepared by a consultant with information from SMD. The district court didn't decide whether or not those statements were going to be attributed to SMD, so that issue was removed. And this was a consultant working for whom? Working for the customer in that instance. Right. So it was not a consultant employed by them. Okay, got it. So that's the Norton fax. That's the Norton fax. Then we had the Internet posting that Mr. Hecker made, which was undisputed, was widely disseminated. And what did that posting say? Well, it said several things, Your Honor, but the key thing that we focused on was the fact that it said that e-move was a closed system, which is consistent with other things that are in the record that SMD was saying about e-move, which is essentially, at least as our way we took it, is that e-move is not accessible to other outside on the broader Internet. So that when you do a search for self-storage from e-move, then it doesn't pull up, you won't be accessible to the wider Internet. So that was the Hecker Internet posting. And the district court said that that was disseminated, but in its view was not made. Then the third category are the references in the call logs, which we've cataloged in our brief and the district court also went through as well. And describe those references. Okay. Those were specific statements that were made about e-move that were recorded in the call logs of SMD.  That users affiliated with U-Haul should get reservations without having to turn their business over to U-Haul. And that they shouldn't trust the software company. Users trust the software company with their data, not a storage operator competing in most markets. The implication there being that e-move is somehow going to steal your data because it's going to be competing, because U-Haul owns its own self-storage facilities in addition to the private facility, independent facilities at least on e-move. So that was one of them. We have the other ones. We have another one. It's at page 149 of the record where the statement is made that reservations made on e-move were, quote, only by U-Haul and that only U-Haul reservation tenants can rate you. And so who are these calls being made from and to whom? These are internal call logs of SMD. So these are SM, people that are calling SMD either asking for information about SMD or information comparing SMD to U-Haul. They could be current customers. They could be prospective customers. But they're customers. And who's writing in the log? This is SMD. These are from SMD's internal phone log. And so they're supposedly recording what they said to the caller? Yes. And in some instances, they also, what they did is they cut and pasted e-mails into those logs. And the testimony was that if they wanted to preserve an e-mail, it would be put in those logs. And then the fourth category were the statements that were made at the trade show, which were also pointed out in the district court and in our briefs. And so what we had there is, based on all of those, we had a reasonable argument that SMD was making false statements about e-move. And then we also had a non-frivolous argument that a jury could infer that, first of all, the HECR statement on the Internet was disseminated. We know that. That's clear. We had a non-frivolous inference that we made that the jury could infer a wider dissemination based on other statements in the context that they were made and the fact that other similar things. Counselor, as you go through that, and I've got those records here. I've looked through them. You know, I have to say, it's not very much there. This doesn't look like much of a case for a big, sophisticated company like U-Haul. Well, you run a major operation. U-Haul is a well-known brand. And this stuff just seems just trivial. It may seem trivial to Your Honor, but for competitors in this business, it's serious stuff. And the problem that you have in these cases, and I'll admit it, it's a problem, and that is that when you're dealing with promotion that takes the form of one-on-one contacts with customers rather than, say, an ad on TV, a lot of times, and maybe I'll say most times, you're going to have to prove this dissemination issue by circumstantial evidence. And I will admit, that was the kind of evidence that we proved here. We've cited the guidance case out of New Mexico. It's not on all fours, I admit, but it shows that you can, in fact, infer dissemination from individual communications based on circumstantial evidence, which is what we try to do. We lost. I'm not, you know, we're not here to argue the merits and summary judgment. We lost. We took our lumps. We folded our tent. And that's where the case should have ended. And I think that brings up the other point I wanted to make, and that is that SMD's principal defense on appeal, in our view, shows the error of their analysis. Their most – their principal argument in their brief is that because the summary judgment order was not appealed, that therefore means there must be an affirmance of the fee award. And that disregards the – or miscomprehends the basic standard on appeal and in the case. You don't get them just because you won on summary judgment. The fact that we won on – they won on summary judgment meant only that the district court decided that there were no issues of material fact. The court didn't decide the subsequent issue, which is before this Court, and that is, did Emuve raise – did they cross that line from frivolous into non-frivolous and debatable, which is the standard the Court has used? And I think that we did. We crossed that line. And if the Court holds that it's just because you presented an argument on summary judgment that the district court decided not to draw the inferences that you at least had a non-frivolous basis for arguing should be drawn, then that's not going to just chill the, you know, plaintiff in this case. It would chill the plaintiff in other cases from bringing meritorious suits. I'd like to reserve the rest of my time for rebuttal. Before I do that, I'd just like to make one correction of the record, Your Honor. There were – there were a couple – when I was preparing for the argument, I noticed that there were a couple of citations to Hecker's depositions at pages of 13 and 38 and 14 of our brief that were not fully supportive of the positions that they were cited for. I – and out of candor to the Court, I wanted to correct the record on that. I'll reserve the remainder of my time for rebuttal. Let's hear from the other side. Good morning, Your Honors. May it please the Court. Eric Fraser for SMD and the other appellees. With me at counsel table is Thomas Hudson. He's looking up those references that we just got, so we might – you might pass me a note or something once we address those pages, those clarification pages. This case is the poster child for awarding fees to a Lanham Act defendant as a result of a groundless and unreasonable case. The district court in this case was outraged at Emove as you picked up on, and that's for a good reason, because it had to do – I just said annoyed. Annoyed. Fair enough. He might have been outraged, but I just said annoyed. Fair enough. You know, this is a cold record, but the court in this case had to do what you had to do here. At a hearing, take time out of argument to ask, which statements are you actually alleging here? And the court went one by one. Are you talking about this statement? Are you making claims based on that statement? It had to do the same thing here. That's what SMD had to do. It had to fully brief all of the statements that were in the briefs, even though none of those ended up forming a basis for the claim. The judge couldn't pin down what this case was about, right? The Lorton facts was front and center in the complaint, as you know. It was then disclaimed three different times. The court noted that at footnote two of its opinion and summary judgment. But then the facts came back in. It was back out, back in. But it never could have supported a Lanham Act claim, regardless of whether it was actually disclaimed or regardless of whether it was actually in the case. As you noted, it was not prepared by SMD. It was prepared by an independent consultant hired by the recipient of the facts. It was sent to only one single customer, never disseminated more broadly than that, so it could never be the basis of a false advertising case because it was not advertising. It was not disseminated broadly to the market. It wasn't harmful. We know in the record, it's undisputed, that the recipient switched to eMove. So we know that it couldn't be harmful. There were no damages. It wasn't written by SMD. It never could have formed a basis for the complaint. I'd like to address a little bit about the Internet post and the call logs. Many of these focus on this concept of referrals. It's undisputed that U-Haul, in fact, charges $20 for a certain system of referrals called the SOAR network. That's in the district court summary judgment opinion. Those referrals are available only to U-Haul dealers and to premium customers of the software. So this notion that these statements suggest that eMove.com is closed and not accessible on the Internet simply isn't in the record. These statements don't say that eMove is closed, that you can't access these pages from the Internet. As the district court found, that couldn't be what the statements mean because it's so obviously wrong. And, in fact, the statements don't say that. They say they discuss the eMove or the U-Haul referral system, which is, in fact, on the undisputed facts, a closed network in which customers are charged for making referrals or for receiving referrals. This was a retaliatory lawsuit, plain and simple. It didn't matter that eMove had no case and no evidence. It brought whatever case it could, and it kept it alive as long as it could. It didn't matter what the truth was or what the law was. It needed a case, any case. It didn't matter how legally frivolous the case was. It kept it going long past the time when it should have ended the case, long past the time when discovery showed there was nothing there, when the summary judgment opinion came out and there was nothing there. eMove filed an amended complaint that was even more frivolous than the first one. And rather than dismissing it immediately in recognition of the court's position in summary judgment, eMove continued discovery, took depositions, filed a discovery dispute. Counsel, what's our standard of review here? The standard of review, Your Honor, on the key questions here is a deferential one. It's clear that whether certain circumstances meet the standard for being an exceptional case is a question of law that's reviewed de novo. Okay, so we have to determine then whether we think it's exceptional. Based on the circumstances as found by the district court. So it's a two-part inquiry. Okay, so finding is the fact we're going to review for clear error. Yes. Okay. And then on the question as to whether those facts amount to exceptional circumstances, that's de novo. And then once he decides that he may do that under the statute, that would be abuse of discretion. I have yet to see that kind of abuse of discretion. But there is an intermediate step, I think, Your Honor, which is describing what the circumstances are based on the facts. So I'll give you a quick example. The district court found that there was shifting allegations, right? So the questions of fact are what were the allegations all along. The district court found that those allegations shifted throughout the case. That's, I think, describing those circumstances as under abuse of discretion review. And then determining whether shifting allegations can support a fee award because it's exceptional. But, you know, those are not findings of fact on anything that's disputed. I mean, all we have to do is look at the record. What were the allegations and did they change? I mean, that's – I don't know that that's anything other than we can look at it just the same way the district court did. Was there a dispute as to whether there were shifting allegations? Yes. And I think that dispute is here today as well. EMU disputes and it's brief that the allegations shifted. It insists that it merely narrowed the claims. The district court characterized those as shifting. It had the full record, the full magnitude of the shifting allegations. That's not too unusual in litigation, though, for plaintiffs to make adjustments. They might characterize them as adjustments rather than shifting positions. Yeah, but whatever they did, they did. And it's right there in front of us. That's right. But I think that's why there is this deferential review because you can characterize them as adjustments. But the district court judge who lived with this case for a period of time saw these allegations shift over time. He was there in the courtroom, well, in this case by video conference, watching these allegations shift and watching EMU waste the court's time and the party's time as we try to determine what, you know, what was in the case and what was out and how the allegations shifted over time. Your Honor, the First Circuit in TAMCO explained this. It says, The district court has the intimate knowledge or only the district court has the intimate knowledge of the nuances of the underlying case and in determining whether sanctions are warranted, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard. And I'd like to spend just, if I can, just about 20 seconds explaining that in the Stephen W. Boney case and in the Schwartz case from the late 1990s, this court explained the full standard of review. By the time it got to SECALT, the court adopted or stated a simpler version because only the simpler version was necessary to decide that case. But the Stephen W. Boney case and the Schwartz case remain good law in this circuit, have not been overruled, and that's confirmed by Cairns and the Love case, which are, the Love case in particular is relatively recent. It says, We review an award of attorney's fees for abuse of discretion, factual findings for clear error, and legal inclusions de novo. So the notion that the central questions in this case are de novo is based on an incorrect reading of this court's precedents. I'd like to turn back a little bit to the statements here. If you look through Emu's opening brief, you'll find the same things that happen in the district court, where the brief is filled with benign and almost meaningless statements. You have statements like, SMD got a customer. Marcus Hecker sent an email. F. U. Hall. This is not false advertising. These are not actionable statements. They do not violate the Lanham Act. And so what you have to do in evaluating whether this case is exceptional is strip away all of that junk and realize what is left in this case, and what is left is almost nothing, nothing that's actionable, certainly. Congress established a fee-shifting regime for exceptional cases. This is an exceptional case, and we know that from this court's precedents. In Cairns, in the Society Seville case, the Love case, and the Segalt case, all stand for the proposition that a case is exceptional when there is an utter failure of proof. Here, there is an utter failure of proof on dissemination. That's an incredibly important element in a Lanham Act case, because without dissemination, it's not advertising. If it's not advertising, it doesn't violate the Lanham Act. The Lanham Act, of course, doesn't reach all business torts. It doesn't reach unfair competition. It certainly doesn't reach fair competition. Now, are you contending there's no plausible argument that the telephone calls were dissemination? That's right, Your Honor, because the only actionable or the only telephone calls that eMove actually alleges are actionable are only two of them. eMove had the full call logs for all customers. There were only two call logs that at the end of the day it says are actionable. That is not dissemination. That means statements made to only two customers in a market of over 50,000. We know under precedents from this circuit and other circuits, two calls in a market of 50,000 is not an advertising campaign. And what about their argument that it was reasonable to argue that a lot of this stuff isn't going to show up And, therefore, circumstantial evidence is permissible as a basis for arguing now, of course, they lose, for arguing advertising. We don't we do not dispute that circumstantial evidence can support a Lanham Act case, but the question is circumstantial evidence of what and what is the circumstantial evidence here. The e-mail or the statements got a customer sent an e-mail, that is their circumstantial evidence, but that is not circumstantial evidence that there was a false advertising campaign. That's evidence merely that SMD communicates with its customers, which is certainly fair in the business world. I'd like to close by saying that this was not a close game. This was not mere summary judgment. This was a blowout. The court found that summary judgment was easy. EMU hauled SMD into court and forced it to pay its attorneys hundreds of thousands of dollars to defend against a frivolous case. Congress created a fee-shifting statute for exceptional cases. This case is exceptional, and we ask that you affirm the judgment. Thank you. Thank you.  Thank you, Your Honor. I'd like to start just briefly on the standard of review. In the Seek All case, which postdates all of the cases that my colleague just here cited, the court stated the standard. We review de novo the district court's legal determination that an action is exceptional under the Lanham Act. However, once an action is determined to be exceptional, the district court's decision is reviewed from views of discretion. That's the standard of review in this circuit. The First Circuit is not finding here. The Seek All case is. There was no fact-finding in this case. There was just a look at the record, the same kind of thing that this Court does. So if we thought that it was exceptional, then you're going to lose here. Is that right? If you think, if Your Honors think it's exceptional, we lose. Yes. Okay. So what do we have to find in order to determine that it's exceptional? We have to find that it's unreasonable. Well, the two prongs, the only two prongs of the district court. Unreasonable and groundless. Unreasonable and groundless, which the Court, this Court has elucidated in opinions means that it has to be frivolous. I mean, there's a number of different standards, but the ones that frivolous and without any debatable issues, so that if there are debatable issues and nonfrivolous issues, our submission is that is enough. We can lose our case on them. We did lose our case on the merits, but we are not going to be hit with attorney's fees for that. And just, I know I'm almost out of time, but just a few other things. In terms of the Lorton facts, we didn't disclaim that. We always said it was part of the circumstantial evidence, even though it itself didn't give rise to damages. Our circumstantial case was the same kinds of statements were being repeated in different areas, which we believe gave a valid basis to argue to a jury that they could infer a wider dissemination when they have a situation where the evidence is not going to be easy to get. That's our circumstantial case. And then I would say that there was not a complete failure of proof in dissemination because, as I pointed out, it was undisputed that the Hecker Internet posting, which the Court, of course, found not to be false, was disseminated. So we would urge the Court to exercise its Danova review and hold that this, while maybe not a meritorious case, was not an exceptional one warranting attorney's fees. Okay. Thank you very much. Thank both sides for their arguments. The case of EMU v. SMD-Salford-Ankerson now submitted for decision.
judges: Silverman, Fletcher, Bybee